IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation,<br><br>    Plaintiff,<br><br>v.<br><br><br>AEROHAWK AVIATION, INC., An Idaho corporation, et al.,<br><br><br><br>    Defendants. | Civ. No. 02-0520-E-BLW<br><br><br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it National Union's motion for summary judgment. At the conclusion of oral argument on November 8, 2005, I explained that I was leaning toward denying the motion but needed time to examine the Rigler Declaration. After reading that Declaration, I find that the motion must be denied for the reasons expressed from the bench and set forth in the following analysis.

## ANALYSIS

Turning first to National Union's argument that a presumption of negligence

Memorandum Decision & Order -- page 1

should be applied that would render Adams negligent no matter who was flying the aircraft.  Because I find there are disputed issues of material fact as to whether Adams was in control of the aircraft in question, it is unnecessary to resolve whether National Union's presumption argument should be adopted.  That issue depends upon a resolution of the "pilot-in-command" regulations and NTSB rulings.  Those issues may need to be addressed by way of pre-trial motion, but need not be resolved here.

      In determining whether summary judgment can be granted, the dispositive issue is whether a rational jury might find that Adams was the pilot at the time of the crash.  In making that finding, I am required to examine the evidence in a light most favorable to National Union, and draw all reasonable inferences in favor of National Union.

      That standard of review is crucial here, because this is a very close case.  After examining the evidence in a light most favorable to National Union, and granting it all reasonable inferences, I find  that a rational jury could decide that Adams was the pilot at the time of the crash.

      In making this analysis, I begin by asking why Adams went along on the flight.  What was his motivation – to be a mere passenger or a pilot?  If there was no way to know, summary judgment would be proper; the jury could not be

Memorandum Decision & Order -- page 2

allowed to speculate.

However, here we have conflicting evidence on his motivation. For example, just 2 days before the accident, Adam's employer had obtained insurance coverage for a newly purchased Cessna 425 – the same model of plane involved in the crash at issue here.  The application for insurance indicated that Adams would pilot the aircraft.  In fact, both Jorgensen and Adams were listed as pilots on the insurance policy.

In order for his employer to have the plane insured while Adams was piloting it, Adams had to complete flight training on the Cessna 425 and obtain 25 hours flying time in the aircraft.  Notably, Adams could only obtain those hours of flying time if another pilot with experience with the aircraft was next to him in the cockpit.  Since Jorgensen had that experience, it seems clear that Adams had a compelling motivation to take the controls during this test flight.

NSI argues that it is an unreasonable inference to assume that Jorgensen, who was actually authorized to test the auto feathering device, would turn control of the airplane over to someone who had no flying time in the airplane while they turned off the engine in mid-flight to test the auto feathering device.  However, that argument ignores the fact that Adams was also a very experienced pilot, had the same licensure as did Jorgenson, and was qualified to fly the Cessna 425 – he just

Memorandum Decision & Order -- page 3

lacked the hours in the aircraft necessary to satisfy the insurance companies. It also ignores the fact that turning off an engine in mid-flight is a standard part of a pilot's training and is not as dangerous a maneuver as it would appear at first blush.

There is additional evidence supporting the inference that Adams was the pilot. Eric Rigler, National Union's expert, stated in his Declaration that "it is the custom and practice for pilots aboard complex multi-engine aircraft to divide duties during a flight, especially during a maintenance test procedure." *See Rigler Declaration* at p. 6. He goes on to explain that, typically, one pilot will handle radio communications while the other pilot will handle the controls of the aircraft. *Id.*

It is undisputed that Jorgensen was the person communicating with the control tower. This fact, in combination with Rigler's testimony of "shared duties," supports an inference that Adams was at the controls.

While there is evidence that even when flying with a co-pilot, Jorgensen often handled both communications and piloting tasks when doing test flights, it would nevertheless be reasonable for the jury to adopt Rigler's "shared duties" testimony for three reasons. First, both Jorgensen and Adams were listed as pilots on the insurance policy for NSI's new Cessna 425, which is some indication they

Memorandum Decision & Order -- page 4

Case 4:02-cv-00520-BLW-MHW   Document 351   Filed 11/08/05   Page 5 of 6

may fly together as a team – sharing duties.  Second, Adams was no neophyte – he had the highest credential the FAA could issue, the Transport Pilot license.  Third, as Rigler testified, it makes sense from a safety standpoint, when an engine is being killed, and two highly-credentialed pilots are in the cockpit, to have one pilot handle the radio and the other pilot handle the aircraft.

    This is a close case.  In close cases, I always returns to the standard of review.  And that standard of review favors National Union – it gets to have the evidence examined in a light most favorable to it, and to have all reasonable inferences drawn in its favor.  Under that standard, a reasonable jury could find that Adams was the pilot at the time of the crash.

    This case has only a surface similarity to *Boise Payette Lumber Company v. Larsen*, 214 F.2d 373 (9th Cir. 1954).  The similarity is that in both cases, a party argued that a passenger was the pilot at the time of the crash.  But the similarities end there.  In *Boise Payette*, the attempt to prove that a passenger was a pilot ran headlong into a contrary jury verdict – the presumptions were all arrayed against that argument. Here, precisely the opposite is true: The presumptions are arrayed in favor of inferring that someone other than the authorized pilot was the actual pilot.

    Moreover, the facts here are much more supportive of a finding that the "passenger" was the pilot.  Here, Adams had a real motivation, and the actual

Memorandum Decision & Order -- page 5

expertise, to take the controls with an experienced pilot beside him. But, in *Boise Payette*, the passenger had absolutely no motivation to pilot the aircraft – in fact he had sworn off flying the previous year.

For all of these reasons, I find that genuine issues of material fact exist in this case and preclude the issuance of a summary judgment. For that reason, I will deny NSI's motion.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions for summary judgment (docket no. 320 & 331) are DENIED.

DATED: **November 8, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court