IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>AEROHAWK AVIATION, INC., an Idaho Corporation; MARK ULSCHMID, an Individual;  JAMES D. JORGENSEN, an Individual; JASEN JORGENSEN; JODY NELSON and MARY WHITE, as  Personal Representatives of the ESTATE  OF JAMES D. JORGENSEN; SCOTT D. ADAMS, an Individual; R. CHESTER ADAMS; PHYLLIS M. ADAMS and LISA LOUGHMILLER as Personal Representatives of the ESTATE OF  SCOTT D. ADAMS; NSI, INC., an Idaho  Corporation f/k/a NSI Network Solutions, Inc.; RECREATIONAL SPORTS AND IMPORTS, INC., an Idaho Corporation; CORPORATE AIRCRAFT, INC., a California  Corporation; AEROSPACE CONTROL PRODUCTS, INC., an Iowa Corporation; McCAULEY PROPELLER SYSTEMS, a Division of The Cessna Aircraft Company, Kansas Corporation; CESSNA AIRCRAFT COMPANY, a Kansas Corporation; PRATT & WHITNEY CANADA, a Canadian Corporation and a Division of United | Case No. CV-02-520-E-BLW<br><br>**MEMORANDUM DECISION** |

**Memorandum Decision – Page 1**

| | |
|---|---|
| Technologies Corporation, a Delaware | ) |
| Corporation; PRATT & WHITNEY, a | ) |
| Division of United Technologies | ) |
| Corporation, a Delaware Corporation; | ) |
| WOODWARD GOVERNOR COMPANY, | ) |
| a Delaware Corporation; and | ) |
| INTERNATIONAL GOVERNOR | ) |
| SERVICES, INC., a Colorado Corporation, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## INTRODUCTION

The Court has before it NSI's motion for summary judgment. The Court heard oral argument on January 24, 2006, and took the motion under advisement. For the reasons expressed below, the Court will grant the motion.

## ANALYSIS

In this summary judgment proceeding, the Court must grant all inferences in favor of National Union, and is guided by its prior decisions in this case. In a prior decision, this Court held that questions of fact exist as to whether Scott Adams went on the flight to gain training necessary to fly a similar aircraft recently purchased by his employer, NSI. However, that decision was a close call and was based upon the Court construing a series of inferences in a light most favorable to National Union.

Now, National Union asks the Court to go one step further and, in reliance

**Memorandum Decision – Page 2**

on those same inferences, conclude that Adams was acting within the scope of his employment with NSI. However, Adams' desire to benefit NSI is but one factor indicating that he was acting within the scope of his employment with NSI: "Conduct for the benefit of the principal that is incidental to, customarily connected with, or reasonably necessary for the performance of such duties is within the scope of the agent's authority." *Idaho Pattern Jury Instructions* § 6.43.1.

This is not the end of the inquiry, however. Idaho courts have adopted the factors set forth in *Restatement (Second) of Agency*, § 228 (1958). *See Wooley Trust v. DeBest Plumbing, Inc.*, 983 P.2d 834, 838 (Idaho 1999). According to the *Restatement*, an employee is not acting in the course of his employment even if motivated to benefit his employer where the employer has prohibited that conduct. *Restatement, supra* at § 230, comment c.

In this case, while Adams may have been motivated to fly with Jorgensen to obtain training, he was violating NSI policy in doing so. Paul Wareing, President and CEO of NSI, testified that "[i]f [Adams] was to do something trainingwise for us, he was supposed to inform me and get my approval, as I required of all my employees. . . . . I wanted to know what my employees were doing and approve what they were doing." *See Wareing Deposition* at p. 85. Wareing also testified

**Memorandum Decision – Page 3**

that he had never approved training after the fact, but required approval before the training was to take place. *Id.* at p. 86.

Adams never obtained this approval. It is undisputed that Wareing had no knowledge that Adams was flying with Jorgensen on the day of the crash.

Thus, Adams was engaged in not only an unauthorized act but also a prohibited act if he sought training from Jorgensen without prior approval from Wareing. This is a strong indication that Adams was acting outside the scope of his employment: "Prohibition to do any acts except those of a certain class may indicate that the scope of employment extends only to acts of that class." *Restatement, supra* at § 230, comment c at p. 512. The *Restatement* explains this principal in some detail:

> [T]he prohibition by the employer may be a factor in determining whether or not, in an otherwise doubtful case, the act of the employee is incidental to the employment; it accentuates the limits of the servant's permissible action and hence makes it more easy to find that the prohibited act is entirely beyond the scope of employment. Thus, where a person employs another to make collections, a specific direction by such employer that servants shall not use force in seeking to collect debts is a factor tending to show that an assault made by the servant to enforce collection is not within the scope of employment.

*Id.* At the same time, the *Restatement* notes, an employer cannot prohibit certain acts but also demand results that compel the violation of the prohibition. *Id.* For example, an employer might require his employees to sell many guns but prohibit

**Memorandum Decision – Page 4**

them from inserting cartridges while exhibiting a gun, knowing that this is a necessary and common practice by his salesmen to close sales. When the employee does insert a cartridge in the course of a sale, the *Restatement* concludes that he is acting within the course of his employment. *Id*. at illustration 1.

That illustration might apply here if NSI required Adams to obtain approval for training knowing that Adams would nevertheless have to seek unapproved training. There is no such evidence. The record is clear that NSI provided Adams with approved training. For example, NSI earlier provided training for Adams to fly a Cessna 414, *see Wareing Deposition* at p. 54-55, and it is undisputed that Adams was enrolled by NSI in a training class for the Cessna 425. The record contains no evidence that Adams was encouraged or compelled to seek unapproved training.

While scope of employment questions are typically for the finder of fact, "conduct that is clearly outside the scope of employment may properly be decided by the court as a matter of law." *Podolan v. Idaho Legal Aid Services*, 845 P.2d 280, 288 (Id.Ct.App. 1993). Adams conduct was clearly outside of his course of employment, and hence the Court will grant NSI's motion as to Adams.

This same conclusion is even more clearly applicable to Jorgensen. First, unlike Adams, he was not an employee of NSI at the time of the accident – at most,

**Memorandum Decision – Page 5**

he may have flown for NSI in the past. While he was included on the NSI insurance policy, that only indicates a desire by NSI to enter into some relationship with him in the future.

Jorgensen flew Hibbard's Cessna to test Aerohawk's repairs, a purpose that had nothing to do with NSI. While Jorgensen may have incidently been improving his proficiency by flying the Cessna 425, there is no evidence that this was even remotely one of his purposes for the flight. Finding agency in these circumstances requires an analysis akin to strict liability – NSI could be tagged with Jorgensen's negligence anytime he flew a plane similar to NSI's aircraft. The Court cannot allow such a result.

National Union argues that one of Jorgensen's purposes for the flight might have been to train his friend Adams. However, as the Court explained above, Adams was not acting in the course of his employment in seeking training. It follows that Jorgensen could not become NSI's agent by assisting Adams to do something outside Adams' course of employment.

For all of these reasons, the Court will grant NSI's motion. Given that NSI is the last defendant in this case, the Court will enter a separate Judgment as

**Memorandum Decision – Page 6**

required by Rule 58.



DATED: **January 27, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision – Page 7**